UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

D.B., individually and on behalf of L.B.,
a child with a disability,

                            Plaintiff,

  -v-                                 5:14-CV-01520
                                     (DNH/TWD)

ITHACA CITY SCHOOL DISTRICT,

                            Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                 OF COUNSEL:

OFFICE OF EDWARD E. KOPKO          EDWARD E. KOPKO, ESQ.
Attorney for the Plaintiff
308 Tioga Street, 2nd Floor
Ithaca, NY 14850

BOND, SCHOENECK LAW FIRM          JONATHAN B. FELLOWS, ESQ.
Attorneys for the Defendant
One Lincoln Center
Syracuse, NY 13202

DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION and ORDER**

**I.    INTRODUCTION**

Plaintiff D.B., individually and on behalf of her disabled child L.B., filed this action on December 16, 2014 against defendant Ithaca City School District (the "District") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1401, *et seq.*, Article 89 of the New York State Education Law and Section 504 of the Rehabilitation Act. Plaintiff seeks review of a final administrative decision of the New York State Review Officer pursuant

to which she sought tuition reimbursement from the District for the unilateral placement of L.B. in a private, residential school for the 2012-2013 school year.

Both parties have filed motions for summary judgment and have fully briefed such motions. Oral arguments were heard of September 1, 2016 in Utica, New York.

## II.   **FACTUAL BACKGROUND**[1]

Plaintiff is the adoptive mother of L.B., a disabled student residing in the Ithaca City School District. In 2008, while L.B. was in fourth grade, the District developed a Individualized Education Prgoram ("IEP") for L.B. that included consultant teacher direct services and occupational therapy. Such IEP noted that L.B. had a nonverbal learning disability which impacted her progress in writing and math. In May 2009, the District prepared an IEP for L.B.'s fifth grade year. On August 29, 2009, plaintiff advised the District that she would be enrolling L.B. in a private school for the 2009-10 academic year. In November 2010, the District developed a 2010-11 IEP for L.B., however, plaintiff declined the IEP and enrolled L.B. in a private school for the 2010-11 academic year. In September 2011, plaintiff enrolled L.B. in the Chemung Valley Montessori School in the Horseheads City School District.

In March 2012, the Horseheads School District evaluated L.B. and concluded that she presented with characteristics of a nonverbal learning disability. In July 2012, plaintiff advised the District of her belief that the Greenbrier Academy ("Greenbrier") would be the most appropriate educational setting for L.B. and requested that a comprehensive evaluation be conducted by the District.

In August 2012, Dr. Laurie Willick conducted a supplemental psychological evaluation of L.B. On August 21, 2012, the District's Committee on Special Education ("CSE") met with

---

[1] The factual background is gleaned from the parties' Statements of Material Facts submitted pursuant to Northern District Local Rule 7.1.

- 2 -

plaintiff to discuss the 2012-2013 school year. Plaintiff provided the District with a report prepared by Dr. Betsy Grigoriu, an educational consultant retained by plaintiff, who concluded that the only means of providing L.B. with a meaningful education was placement in a residential school setting. On August 28, 2012, the District adopted an IEP for L.B. for the 2012-13 school year. Thereafter, plaintiff unilaterally enrolled L.B. at Greenbrier.

In September 2012, plaintiff submitted a request to the District for an impartial hearing. An impartial hearing was held on October 17, 2012 and by decision dated November 26, 2012, the Impartial Hearing Officer ("IHO") found that the District offered L.B. a free appropriate public education for the 2012-13 school year; that plaintiff failed to prove that Greenbier was an appropriate program for L.B. and that equitable considerations favored the District.

In December 2012, plaintiff filed an appeal to the New York State Review Officer ("SRO") of the IHO's decision. By decision dated September 17, 2014, the SRO agreed with the IHO that the District offered L.B. a free appropriate public education for the 2012-13 school year and, therefore concluded that plaintiff was not entitled to a tuition reimbursement.

### III.   DISCUSSION

1. *Standard of Review.*

Although the parties have styled their submissions as motions for summary judgment, the procedure is in substance an appeal from an administrative determination, not a summary judgment. See Wall v. Mattituck-Cutchogue Sch. Dist., 945 F. Supp. 501, 507-508 (E.D.N.Y. 1996). IDEA cases employ a different legal standard because "the existence of a disputed issue of material fact will not defeat the motion." J.R. v. Bd. of Educ. of the City of Rye Sch. Dist., 345 F. Supp. 2d 386, 394 (S.D.N.Y. 2004). The court "must engage in an independent review of the administrative record and make a determination based on a 'preponderance of

- 3 -

the evidence.'" Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 108 (2d Cir. 2007) (quoting Mrs. B. v. Millford Bd. of Educ., 103 F.3d 1114, 1120 (2d Cir. 1997)). "While federal courts do not simply rubber stamp administrative decisions, they are expected to give due weight to these proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." M.S. v. Bd. of Educ. of the City Sch. Dist. of Yonkers, 231 F.3d 96, 102 (2d Cir. 2000).

*2. Relevant Legal Framework.*

Congress enacted the IDEA to promote the education of children with disabilities, "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs [and] ... to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1). A free appropriate public education "must include special education and related services tailored to meet the unique needs of a particular child, and be reasonably calculated to enable the child to receive educational benefits." Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 122 (2d Cir. 1998).

The key element of the IDEA is the development of an IEP for each disabled student, which includes "a comprehensive statement of the educational needs of a handicapped child and the specially designed instruction and related services to be employed to meet those needs." Burlington, 471 U.S. at 368. The IEP is collaboratively developed by the parents of the child, educators, and other specialists. See 20 U.S.C. § 1414(d)(1)(B). New York has set forth regulations to implement the goals of the IDEA, which track the IDEA closely. "In developing a particular child's IEP, a [Committee on Special Education] is required to consider four factors: (1) academic achievement and learning characteristics, (2) social development,

(3) physical development, and (4) managerial or behavioral needs." Walczak, 142 F.3d at 123.

If a school district fails in its obligation to provide a free appropriate public education to a disabled child, the parents may enroll the child in a private school and seek retroactive reimbursement for the cost of the private school from the state. See Burlington, 471 U.S. at 370; M.S. ex rel. S.S. v. Bd. of Educ., 231 F.3d 96, 102 (2d Cir. 2000). In determining whether parents are entitled to reimbursement, the Supreme Court has established a two pronged test: (1) was the educational program proposed by the school district inappropriate; (2) was the private placement appropriate to the child's needs. See Burlington, 471 U.S. at 370; see also Florence County Sch. Dist. Four v. Carter ex rel. Carter, 510 U.S. 7, 12–13 (1993). Moreover, because the authority to grant reimbursement is discretionary, "equitable considerations [relating to the reasonableness of the action taken by the parents] are relevant in fashioning relief." Burlington, 471 U.S. at 374.

Parents seeking reimbursement for a private placement bear the burden of demonstrating that the private placement is appropriate, even if the proposal in the IEP is inappropriate. M.S., 231 F.3d at 104. Nevertheless, parents are not barred from reimbursement where a private school they choose does not meet the IDEA definition of a free appropriate public education. See 20 U.S.C. § 1401(9).

In New York, parents seeking reimbursement for private school tuition may request a hearing before an IHO. The decisions of an IHO may be appealed to the SRO. See N.Y. EDUC. L. § 4404. Under the IDEA, the final administrative decision of the state, which in New York is the SRO decision, may be reviewed by a federal district court. See 20 U.S.C. § 1415(i)(2)(A). The district court may review the administrative record, hear additional evidence, and grant such relief it deems appropriate. See 20 U.S.C. § 1415(i)(2)(C).

*(3) The District Provided L.B. a Free Appropriate Public Education.*

Plaintiff contends that both the IHO and SRO decision erred in that they did not adequately address that: (i) the District did not properly perform additional testing of L.B. in August 2012 when completing the IEP for the 2012-2103 school year, (ii) the District employees never received any specialized training regarding nonverbal learning disability ("NVLD") and were unable to provide the specific instruction needed by L.B. to address her NVLD and (iii) plaintiff's educational consultant concluded that the only means of providing L.B. with a meaningful education was placement in a residential school setting which specializes in educating and working with adolescents who have similar profiles to L.B. None of plaintiff's arguments are sufficient to disturb the conclusions of the SRO.

(a) *Need for Additional Testing*.

Plaintiff asserts that the District did not properly perform additional testing of L.B. in August 2012 which plaintiff believes would have substantiated the conclusion that L.B. required a residential educational setting.

In her decision, the SRO did discuss that meeting minutes from an August 2012 CSE meeting denoted a request for updated testing of L.B. in the areas of social / emotional, attention, academic / achievement and assistive technology. However, the SRO determined that even if the failure to perform such updated testing constituted a procedural violation of the IDEA, based upon the other information before the CSE, such possible violation did not cause a deprivation of educational benefits or otherwise lead to the failure to offer L.B. a FAPE for the 2012-2013 school year.

Typically, a FAPE is offered when: (i) the school district complies with the procedural requirements of the IDEA; and (ii) the IEP developed by way of those procedures is reasonably calculated to enable the child to receive educational benefits. See Cerra v.

Pawling Cent. Sch. Dist., 427 F.3d 186, 192 (2d Cir. 2005). If a procedural inadequacy exists, a finding that a student did not receive a FAPE should be reserved for when such inadequacy: (I) impeded the student's right to a FAPE, (ii) significantly impeded the parent's opportunity to participate in the decision-making process or (iii) caused a deprivation of educational benefits. See D.B. v. N.Y.C. Dep't. of Educ., 966 F. Supp. 2d 315,329 (S.D.N.Y. 2013) (citing 20 U.S.C. § 1415(f)(3)(E)(ii)).

A school district must conduct an evaluation of a student where the educational or related services needs of a student warrant a reevaluation or if the student's parent or teacher requests a reevaluation. See 34 C.F.R. § 300.303(a)(2). However, a district need not conduct a reevaluation more frequently than once per year unless the parent and the district otherwise agree and at least once every three years unless the district and the parent agree in writing. See 34 C.F.R. § 300.303(b).

A review of the administrative record demonstrates that the August 2012 IEP considered, among other things: (i) the March 2012 psychological evaluation performed by Dr. Tonya Apgar of the Horseheads School District, (ii) the August 2012 psychological evaluation performed by Dr. Willick and (iii) the August 2012 consultant report of Dr. Grigoriu retained by plaintiff. In light of these recent psychological evaluations of L.B., the District possessed sufficient information about L.B.'s individual needs to enable it to adequately and accurately develop the August 2012 IEP without additional testing.

(b) *Training of District Personnel.*

Plaintiff further claims that the District employees lacked specialized training in non-verbal learning disabilities rendered them incapable of either developing an appropriate IEP or administering such IEP. Plaintiff contends that the SRO erred by finding such issue was not properly before him. Even when considered on the merits, plaintiff's argument fails.

A school district offers a FAPE "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." Board of Educ. of Hendrick Hudson Central School Dist. v. Rowley, 458 U.S. 176, 203 (1982). The "IDEA does not itself articulate any specific level of educational benefits that must be provided through an IEP." Walczak, 142 F.3d at 130. A district is not required to furnish "every special service necessary to maximize each handicapped child's potential." Cerra, 427 F.3d at 195. "Rather, a school district fulfills its substantive obligations under the IDEA if it provides an IEP that is 'likely to produce progress, not regression,' and if the IEP affords the student with an opportunity greater than mere 'trivial advancement.'" Cerra, 427 F.3d 195 (quoting Walczak, 142 F.3d at130).

The August 2012 IEP noted L.B.'s learning disability disproportionately impacted her non-verbal functioning and proposed special education and related services that were specifically designed to address her non-verbal deficits. These included special education consultant teacher services to provide direct instruction, redirection and cuing in mathematics. Further the IEP provided L.B. with a small class setting, a low student-to-teacher ratio and weekly counseling to address the social and behavioral concerns resulting from the non-verbal aspects of L.B.'s learning disability. Evidence before both the IHO and SRO demonstrated that a non-verbal learning disability is neither a specific disability category recognized by the IDEA or its relevant regulations, nor is it a DSM diagnosis. Although district employees testified that they were not familiar with, or specifically trained in, non-verbal learning disabilities as a category, the IEP specifically recognizes that L.B.'s learning disability affects her non-verbal functioning and recommends programming to provide support in those areas, including support specifically requested by Dr. Giguori. As such, the failure of district

personnel to be specifically aware of, or trained in, non-verbal learning disability does not demand reversal of the SRO's decision.

*(c) Need for Residential Placement.*

Plaintiff also contends that due to L.B.'s non-verbal learning disability and consistent with the findings of Dr. Betsy Giguori, the only means of providing her with a meaningful education was placement in a residential school setting which specializes in educating and working with adolescents who have similar profiles to L.B.

The Second Circuit has noted that "[w]hile some children's disabilities may indeed be so acute as to require that they be educated in residential facilities, it is appropriate to proceed cautiously whenever considering such highly restrictive placements. IDEA'S preference is for disabled children to be educated in the least restrictive environment capable of meeting their needs." Walczak, 142 F.3d at 132. Courts in the Second Circuit are reluctant to find that a residential placement is required in the absence of clear evidence indicating that such a placement is the child's only means of achieving academic progress. As the Second Circuit noted, "in general, the Second Circuit requires that a court point to objective evidence of a child's regression in a day-program before finding that a residential placement is required by the IDEA." M.H. v. Monroe-Woodbury Cent. School Dist., 296 Fed. Appx. 126, 128 (2d Cir. 2008).

The August 2012 IEP was developed by the District's CSE after taking into account L.B.'s March 2012 and August 2012 evaluations, plaintiff's concerns and the recommendations of her consultant and consideration of the various options available in the District. In order to meet the unique needs of L.B., the August 2012 IEP recommended L.B. receive daily resource room services and daily direct consultant teacher services together with weekly individual counseling. To assist L.B. manage her anxiety, it provided counseling. It

personnel to be specifically aware of, or trained in, non-verbal learning disability does not demand reversal of the SRO's decision.

*(c) Need for Residential Placement.*

Plaintiff also contends that due to L.B.'s non-verbal learning disability and consistent with the findings of Dr. Betsy Giguori, the only means of providing her with a meaningful education was placement in a residential school setting which specializes in educating and working with adolescents who have similar profiles to L.B.

The Second Circuit has noted that "[w]hile some children's disabilities may indeed be so acute as to require that they be educated in residential facilities, it is appropriate to proceed cautiously whenever considering such highly restrictive placements. IDEA'S preference is for disabled children to be educated in the least restrictive environment capable of meeting their needs." Walczak, 142 F.3d at 132. Courts in the Second Circuit are reluctant to find that a residential placement is required in the absence of clear evidence indicating that such a placement is the child's only means of achieving academic progress. As the Second Circuit noted, "in general, the Second Circuit requires that a court point to objective evidence of a child's regression in a day-program before finding that a residential placement is required by the IDEA." M.H. v. Monroe-Woodbury Cent. School Dist., 296 Fed. Appx. 126, 128 (2d Cir. 2008).

The August 2012 IEP was developed by the District's CSE after taking into account L.B.'s March 2012 and August 2012 evaluations, plaintiff's concerns and the recommendations of her consultant and consideration of the various options available in the District. In order to meet the unique needs of L.B., the August 2012 IEP recommended L.B. receive daily resource room services and daily direct consultant teacher services together with weekly individual counseling. To assist L.B. manage her anxiety, it provided counseling. It

personnel to be specifically aware of, or trained in, non-verbal learning disability does not demand reversal of the SRO's decision.

*(c) Need for Residential Placement.*

Plaintiff also contends that due to L.B.'s non-verbal learning disability and consistent with the findings of Dr. Betsy Giguori, the only means of providing her with a meaningful education was placement in a residential school setting which specializes in educating and working with adolescents who have similar profiles to L.B.

The Second Circuit has noted that "[w]hile some children's disabilities may indeed be so acute as to require that they be educated in residential facilities, it is appropriate to proceed cautiously whenever considering such highly restrictive placements. IDEA'S preference is for disabled children to be educated in the least restrictive environment capable of meeting their needs." Walczak, 142 F.3d at 132. Courts in the Second Circuit are reluctant to find that a residential placement is required in the absence of clear evidence indicating that such a placement is the child's only means of achieving academic progress. As the Second Circuit noted, "in general, the Second Circuit requires that a court point to objective evidence of a child's regression in a day-program before finding that a residential placement is required by the IDEA." M.H. v. Monroe-Woodbury Cent. School Dist., 296 Fed. Appx. 126, 128 (2d Cir. 2008).

The August 2012 IEP was developed by the District's CSE after taking into account L.B.'s March 2012 and August 2012 evaluations, plaintiff's concerns and the recommendations of her consultant and consideration of the various options available in the District. In order to meet the unique needs of L.B., the August 2012 IEP recommended L.B. receive daily resource room services and daily direct consultant teacher services together with weekly individual counseling. To assist L.B. manage her anxiety, it provided counseling. It

also recommended instructional strategies and modifications, including chunking information into manageable portions, taking breaks, talking through assignments and providing a predictable routine in a structured setting. Lastly, it recommended assistive technology and supplementary aids and services to support L.B.

The administrative record demonstrates that the August 2012 IEP was reasonably calculated to enable L.B. to receive educational benefits in the least restrictive environment possible. While plaintiff may have preferred L.B. to be in a residential setting, the District did not fail to provide L.B. a free appropriate public education by utilizing other proven methods. As such, it was adequate for purposes of the IDEA.

*(5) Appropriateness of the Greenbrier Academy and the Balance of Equities.*

Because the 2012-13 IEP was reasonably calculated to meet L.B.'s needs and thus offered her a free appropriate public education, plaintiff has not satisfied the first prong under the Burlington reimbursement test requiring the IEP be inadequate. Thus, there is no need to address the appropriateness of the Greenbrier Academy or whether equity would support an award of reimbursement.

## IV. **CONCLUSION**

For the reasons stated above, the preponderance of the evidence shows that the August 2012 IEP developed by the District for L.B. for the 2012-13 school year was reasonably calculated to provide L.B. with educational benefits. As a result, the decision of the SRO will be affirmed and plaintiff's request for a tuition reimbursement for the 2012-13 school year will be denied.

Therefore, it is ORDERED that:

(1) the decision of the State Review Officer is **AFFIRMED**;

(2) Defendant's motion for summary judgment is **GRANTED**;

(3) Plaintiff's motion for summary judgment is **DENIED**;

(4) The complaint is **DISMISSED** in its entirety; and

(5)  The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

United States District Judge

Dated: September 13, 2016
        Utica, New York